**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GIVAUDAN SA,

                      Plaintiff,

v.

PHYTO TECH CORP. D/B/A BLUE CALIFORNIA,

                      Defendant.

---

Civil Action No. _____

**COMPLAINT**

Givaudan SA ("Givaudan") alleges as follows for its complaint against Phyto Tech Corp. d/b/a Blue California ("Blue Cal").

## PARTIES AND NATURE OF THE ACTION

1.      Plaintiff Givaudan, a company organized under the laws of Switzerland, is a manufacturer of flavors, fragrances, and active cosmetic ingredients. Its principal place of business is located at 5, Chemin de la Parfumerie, 1214 Vernier, Switzerland.

2.      Non-Party Givaudan Flavors Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1199 Edison Drive 1-2, Cincinnati, Ohio 45216. Givaudan Flavors Corporation is a subsidiary of Givaudan.

3.      Defendant Phyto Tech Corp. d/b/a Blue California ("Blue Cal") is a California corporation, with its principal office at 30111 Tomas, Rancho Santa Margarita, California 92688.

4.      Non-party BGN Tech LLC ("BGN") is a limited liability company organized and existing under the laws of the State of Delaware with its principal office at 30111 Tomas, Rancho Santa Margarita, California 92688.

5.     Givaudan and Blue Cal are the two members of BGN under a Limited Liability Company Agreement dated February 21, 2014 (the "LLC Agreement"). The LLC Agreement is attached  (redacted in part) as **Exhibit A**.[1]

6.     Givaudan has at all relevant times been a 49% owner and member of BGN. Blue Cal has at all relevant times been a 51% owner and member of BGN.

7.     Non-party Conagen, Inc. ("Conagen") is a Massachusetts corporation with a principal place of business at 13-15 Deangelo Drive, Bedford, Massachusetts 01730.

8.     Non-party Steven Chen is a resident of the state of California. Chen is the chairman, CEO, and a director of BGN and has been since BGN was formed.

9.     Chen has been president of Blue Cal since 1994.

10.    Chen is a trustee and beneficiary of the Chen Family Living Trust. The Chen Family Living Trust is the majority owner of Conagen and the sole owner of Blue Cal.

11.    Chen is a founder, principal, and controlling and beneficial owner of Blue Cal and Conagen.

12.    Aside from being the members of BGN, Givaudan and Blue Cal also did business directly with each other, and both companies did business with other entities controlled by Chen, including Conagen.

13.    Several disputes relating to these business relationships are the subjects of separate litigations, including two that are pending in the U.S. District Court for the Southern District of New York (Nos. 1:18-cv-06172 and 1:18-cv-03588, the "SDNY Actions"), one that is pending in the Supreme Court of the State of New York for the County of New York under index

---

[1] Exhibit A is redacted in accordance with redactions previously stipulated between Givaudan and Blue Cal (and/or its affiliates) in connection with a pending related action. Such redactions were stipulated by the parties to address Blue Cal's (and/or its affiliates') allegations that public disclosure of certain provisions of the LLC Agreement would violate the confidentiality provisions thereof. Givaudan makes no concession on those allegations but rather attaches the redacted LLC Agreement in a good-faith effort to avoid unnecessary disputes.

number 653038/2018 (the "New York Action"; complaint attached as **Exhibit B**), and one that is pending in the Superior Court of the State of California for the County of Orange (the "California Action," complaint attached as **Exhibit C**).

14.     This action concerns Givaudan's desire and right to dissolve BGN pursuant to the LLC Agreement.

15.     Events of dissolution have occurred per the terms of the LLC Agreement and under Delaware law (in particular the Delaware Limited Liability Company Act, 6 DE Code § 18-801(2)), which governs.

16.     The LLC Agreement states that upon an event of dissolution, the parties must agree on and appoint a liquidating trustee, but they do not prescribe a procedure or timeline for such agreement. The parties have not yet agreed on a liquidating trustee despite Givaudan's reasonable good-faith efforts.

17.     Givaudan accordingly seeks this Court's intervention to facilitate the contractual dissolution processes to which the parties agreed.

18.     In particular, Givaudan seeks a declaratory judgment as to the parties' obligations with respect to dissolution, winding up, and distributions under the LLC Agreement. Givaudan requires the Court's guidance on how to proceed given that the provision on appointing a liquidating trustee is not specific, and that the parties have not successfully agreed on a liquidating trustee to date.

19.     Givaudan further seeks a speedy hearing of this request and the related issues, which is within the Court's statutory discretion to order.

20.     In the alternative, Givaudan asserts a cause of action for anticipatory breach of the LLC Agreement, based on certain representations and actions of Blue Cal in connection with

Givaudan's dissolution efforts, and seeks Blue Cal's specific performance of its dissolution obligations.

## JURISDICTION, VENUE, AND GOVERNING LAW

21.     This is an action for, among other things, declaratory judgment pursuant to 28 U.S.C.A. § 2201, to determine a question of actual controversy between the parties as more fully set forth herein.

22.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because Givaudan and Blue Cal are respectively the citizen of a foreign state and the citizen of a State, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     The LLC Agreement includes a forum selection clause in Section 14.11 that reads as follows:

> [A]ny legal action, suit or proceeding arising out of or relating to this Agreement, or the breach, termination or validity thereof, shall be instituted in any state or federal court in the State of New York located in the County of New York. Each Party agrees not to assert, by way of motion, as a defense or otherwise, in any such action, suit or proceeding, any claim that it is not subject personally to the jurisdiction of such courts, that its property is exempt or immune from attachment or execution, that the action, suit or proceeding is brought in an inconvenient forum, that the venue of the action, suit or proceeding is improper or that this Agreement, the agreements contemplated hereby or the subject matter hereof or thereof may not be enforced in or by such court. Each Party further irrevocably submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding.

24.     This Court accordingly has personal jurisdiction over Blue Cal, and venue is proper in this Court, pursuant to the parties' agreement.

25.     The LLC Agreement also includes a Delaware choice-of-law provision at Section 14.10 that reads as follows:

> This Agreement and all claims and causes of action (whether in contract, tort or otherwise) shall be governed by and shall be construed in accordance with the laws of the State of Delaware, excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this Agreement to the law of another jurisdiction.

## FACTS

### *GOVERNANCE AND OPERATION OF BGN*

26.     On February 21, 2014, Blue Cal and Givaudan executed the LLC Agreement.

27.     The LLC Agreement provides for a Board of Directors that consists of five (5) members as follows (the "Board"): (i) two (2) members designated by Givaudan (each a "Givaudan Director"), (ii) two (2) members designated by Blue Cal; and (iii) the individual then serving as the Chief Executive Officer (at all times, Chen, together with the two directors designated by Blue Cal (Oliver Yu and Byron Olson) the "Blue Cal Directors").  Ex. A § 7.02(a). Yu is also the co-founder and CEO of Conagen. Olson is also the Chief Patent Counsel and Director of Legal Affairs for Conagen. The Givaudan directors are William Marino and Christopher Thoen (collectively the "Givaudan Directors").

28.     The LLC Agreement established that "the business and affairs of [BGN] and any Subsidiary of [BGN] shall be managed by the Members acting through [the Board]." *Id.* § 7.01.

29.     Subject to certain critical exceptions detailed below, the LLC Agreement granted the Board "full, exclusive and complete discretion, power and authority to manage, control, administer and operate the business and affairs of [BGN] and its Subsidiaries." *Id.* § 7.01.

30.     Givaudan and Blue Cal are the "Member[s]" of BGN under the LLC Agreement. *Id.* § 1.01 at 9.

31.     As set forth below with reference to specific provisions of the LLC Agreement,

certain proposed actions by BGN, such as any transaction involving a Member of BGN or a

member's Affiliate, required unanimous consent of the Board.

32.     Section 1.01 of the LLC Agreement defines "Affiliate" as:

> [A]ny Person that directly or indirectly controls, is controlled by,
> or is under common control with the Person in question, except
> that neither Member nor any Affiliate of any Member shall be
> deemed to be an Affiliate of any other Member solely by virtue of
> the Member's Membership Interest. The term "Affiliated" and
> similar variations shall have correlative meanings. For purposes of
> this Agreement, "control" (including with correlative meanings,
> the terms "controlling," "controlled by" or "under common control
> with") as used with respect to any Person, shall mean the
> possession, directly or indirectly, of the power to direct or cause
> the direction of the management and policies of such Person,
> whether through the ownership of voting securities, by contract or
> otherwise.

33.     Section 7.09 of the LLC Agreement defines certain matters that require

unanimous consent of the Board:

> Notwithstanding the provisions of Section 7.06 and Section 7.08,
> for so long as each Member (together with its Permitted
> Transferee Affiliates) holds a Percentage Interest of at least
> 33.33%, the Company shall not, and shall not permit any of its
> Subsidiaries to, engage in or cause any of the following actions,
> and neither the Board nor any committee thereof shall permit or
> cause the Company, or any of its Subsidiaries, to engage in, take
> or cause any such action except with the unanimous approval of
> the Board (the following enumerated actions being referred to as
> the "Significant Matters"), it being acknowledged and agreed
> that effective as of the time that any Member shall cease to hold
> a Percentage Interest of at least 33.33%, the provisions of this
> Section 7.09 shall no longer apply:
>
> . . .
>
> (t) to the extent not included in the Annual Budget for such year,
> entry into, termination or suspension of any business projects;
>
> (u) entry (or any subsequent amendment, waiver or other
> modification) by the Company (or any Subsidiary thereof) into

any agreement contract or arrangement (i) with any Member or their respective Affiliates (or any director or officer of such Member or any of its Affiliates) (a "Related-Party Transaction") except for entry into the Ancillary Agreements as contemplated hereunder, (ii) providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, (iii) that may restrict the ability of the Company (or any Subsidiary thereof) to compete with any Person in the Business anywhere in the world (whether pursuant to a non-competition, non-solicitation, most favored nation or other similar arrangement), (iv) with a competitor of either Givaudan or Blue Cal or any of their respective Affiliates, (v) with any governmental authority, providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, or (vi) involving any intellectual property rights that are material to the Company (or any Subsidiary thereof) . . . .

34.     Under the above-cited provisions of the LLC Agreement, Conagen is an Affiliate of Blue Cal, a Member of BGN.

35.     BGN has no employees, but instead, uses the accounting employees of Blue Cal to perform all of the internal accounting functions of BGN.

36.     Blue Cal, under the direction of Chen, uses Blue Cal's accounting employees to keep BGN's books and records from which BGN's financial statements are created.

37.     Blue Cal, under the direction of Chen, controls and has signatory authority over BGN's bank accounts, and uses Blue Cal's accounting employees to make payments from BGN's bank accounts.

38.     Blue Cal thereby exercises control over BGN's finances under the direction of Chen.

39.     Conagen is under common control with Blue Cal and BGN due to Chen's ability to direct the management of all three companies by virtue of his status as president and beneficial owner of Blue Cal; CEO and chairman of BGN; trustee and beneficiary of the Chen Family Living Trust; and co-founder, director, and beneficial owner of Conagen.

### THE GREEN NOTE 1 PROJECT
### AND BLUE CAL'S MATERIAL BREACH

40.     In 2016, Givaudan Flavors Corporation signed a joint development agreement with a third party for the development of a biological process to produce a certain ingredient (the "Third-Party R&D").

41.     Givaudan disclosed the existence of the third-party joint development agreement to the Blue Cal Directors at multiple BGN Board meetings, including on or about November 1, 2016. The Board presentation from that meeting, which the Blue Cal Directors received and/or viewed, is attached in relevant part as **Exhibit D**.

42.     During Board meetings, Givaudan stated its intention that once the Third-Party R&D was completed, Givaudan would engage Conagen to do further downstream processing and scale up the results of the Third-Party R&D to manufacture and sell the ingredient to Givaudan. *See* Ex. D ("Work has started at partner company; expected organism will transfer to Conagen in 4Q2017").

43.     On or about June 23, 2017, Givaudan Flavors Corporation entered into a confidentiality agreement with Conagen and disclosed confidential information necessary for Conagen to evaluate its capability to scale up the results of the Third-Party R&D.

44.     On July 10, 2017, Chen called a special meeting of the Board via email to seek Board approval for BGN to enter into an agreement with Conagen under which Conagen would develop a biological process to produce the same ingredient as the Third-Party R&D. This prospective project was known as the Green Note 1 Project. That email, along with subsequent responses, is attached as **Exhibit E** (with redactions).

45.     In the same July 10, 2017 email, Chen attached a draft of a board resolution for the Green Note 1 Project under which BGN would pay Conagen $4,500,000. *See* Ex. E.

46.    Chen's proposal to enter into an agreement with Conagen, an Affiliate of Blue Cal, constituted a Related-Party Transaction and a Significant Matter as those terms are defined in the LLC Agreement. It was also not included in the Annual Budget for 2017 or 2018. As such, it required unanimous Board approval under LLC Agreement §§ 7.09(t) and 7.09(u). *See supra* ¶¶ 32-34.

47.    On or about July 11, 2017, Thoen and Marino emailed the Board voting "no" to the Green Note 1 Project. *See* Ex. E.

48.    On July 12, 2017, Chen acknowledged the Givaudan Directors "no" votes to the Green Note 1 Project. *Id.*

49.    Despite the lack of unanimous consent, on July 25, 2017, Chen sent an email to the Board stating, "I will continue implementing the resolution of 'Green Note' projects for the best interest of BGN-JV . . . ." *Id.*

50.    The LLC Agreement (Ex. A) includes a dispute resolution clause in Section 14.08 that reads as follows:

> In the event of any dispute between the parties, including with respect to the approval of any Significant Matters, the parties shall work together in good faith to resolve such dispute for such time as may be specified under the terms of this Agreement or as otherwise agreed by the involved parties or, if no time limit is provided under this Agreement and the involved parties cannot otherwise agree, then for thirty (30) days from the date of written notice by either party first describing the applicable dispute. If the parties are unable to resolve such dispute within the applicable period, a senior executive officer or each party as may be designated by each party from time to time (or an authorized representative thereof) (each such designee, a "Resolution Representative") shall meet, confer and discuss in person or by telephone conference in an attempt to resolve the dispute or deadlocked matter in good faith. If the Resolution Representatives of the involved parties are unable to resolve such dispute within thirty (30) days following referral of such dispute pursuant to this Section 14.08, then such dispute (i) in the case of any dispute other

than a dispute relating to a Significant Matter, be resolved in accordance with Section 14.10 below and (ii) in the case of any dispute relating to a Significant Matter, any Member shall have the right to elect to cause the Company to be dissolved in accordance with Section 13.01(e).

51.     Section 14.07 of the LLC Agreement provides as follows on the topic of relief available to each party:

> Each party acknowledges and agrees on behalf of itself and its Affiliates that the rights afforded herein are unique and that any violation of this Agreement or any Ancillary Agreement may cause irreparable injury to the Company or non-breaching party for which monetary damages are inadequate, difficult to compute, or both. Accordingly, each party expressly agrees that, in addition to any other remedies which the Company or non-breaching party may have, the Company and nonbreaching party shall be entitled to injunctive or other equitable relief for any breach or threatened breach of any term, provision or covenant of this Agreement or any Ancillary Agreement by the breaching party. Nothing contained herein shall prevent or delay the Company or non-breaching party from seeking specific performance or other equitable remedies in the event of any breach or intended breach by any party of such party's obligations hereunder or any Ancillary Agreement. In addition, the non-breaching party may bring an action on their own or on behalf of the Company against the breaching parties with respect to any breach or bring any action as may be permitted to recover damages on behalf of the Company or the non-breaching party. In any such proceeding or action, the prevailing party or parties shall be entitled to receive from the non-prevailing party or parties, in addition to such other damages and relief as may be awarded, the costs and expenses incurred by it or them in connection with such action, including reasonable attorneys' fees.

52.     On or about July 31, 2017, Givaudan sent Blue Cal a Notice of Dispute advising that advancing the project without unanimous Board consent was a breach of the LLC Agreement and invoking the LLC Agreement's dispute resolution process of Section 14.08. The July 2017 letter is attached as **Exhibit F**.

53.     On or before August 1, 2017, Blue Cal caused BGN to make a payment of $1,000,000 to Conagen for the Green Note 1 Project, consistent with Chen's representation that he would move forward despite the lack of unanimity. *See supra* ¶ 49.

54.     By causing BGN to make a payment of $1,000,000 to Conagen in connection with the Green Note 1 Project despite lacking unanimous Board approval, Blue Cal committed a Material Breach of the LLC Agreement.

55.     Givaudan sent Blue Cal a Notice of Material Breach on August 9, 2017, which is attached as **Exhibit G**.

56.     Blue Cal and the Blue Cal Directors have not replied to any of the above-described notices.

57.     Blue Cal has not cured the Material Breach identified in Givaudan's notice.

58.     Givaudan has carried out its obligations under the LLC Agreement.

59.     Blue Cal did not notify Givaudan of a Material Breach at any time prior to Givaudan's Notice of Material Breach dated August 9, 2017.

60.     Givaudan did not commit a Material Breach of the BGN Agreement prior to Blue Cal's Material Breach, as described above, nor at any time thereafter.

## FAILURE OF DISPUTE RESOLUTION EFFORTS AND DISSOLUTION OF BGN

61.     On or about October 2 and 3, 2018, Givaudan representatives and Chen representatives conducted a two-day mediation concerning the New York Action, the SDNY Actions, and the California Action. *See supra* ¶ 13.

62.     The New York Action concerns, among other things, the Green Note 1 Project and seeks damages caused by Blue Cal's breaches relating to it. *See* Ex. B ¶¶ 55-77, 135-143.

63.     No resolution was achieved during the mediation or at any point to date.

64.     Blue Cal terminated the mediation through counsel on October 11, 2018. The

notice of that termination is attached as **Exhibit H**.

65.     The LLC Agreement (Ex. A) provides as follows in Section 13.01:

> Notwithstanding anything to the contrary contained herein, the
> Company shall be dissolved and its affairs wound up upon the first
> to occur of any of the following events:

> (a)     the consent of the Board pursuant to Section 7.06 or Section 7.09, as
> applicable;

> (b)     the entry of a decree of judicial dissolution under Section 18-802 of the
> Act;

> (c)     a Bankruptcy Event with respect to the Company;

> (d)     any Bankruptcy Event or Change of Control of a Member, its Controlling
> Affiliates or any other Affiliate that is a party to any Ancillary Agreement
> (such Member, the "Affected Member"), if the other Member (the "Non-
> Affected Member"), shall have delivered written notice of its election to
> terminate this Agreement at any time within sixty (60) days after
> becoming aware of such Bankruptcy Event or Change of Control, as
> applicable;

> (e)     at the election of any Member upon written notice to the other Members
> within thirty (30) days after the failure of the Resolution Representatives
> to resolve a dispute in respect of a Significant Matter within the period set
> forth in Section 14.08; or

> (f)     at the election of a non-breaching Member, if there has been a Material
> Breach of the Agreement by the other Member, which breach is not
> waived by non-breaching Member or cured by the breaching Member
> within sixty (60) days after receipt by breaching Member of written notice
> thereof from the non-breaching Member; provided, that the Member
> seeking to dissolve the Company pursuant to this Section 13.01(f) is not
> then in Material Breach of its obligations under this Agreement.

66.     The LLC Agreement provides as follows at Section 13.02:

> Upon the dissolution of the Company as provided in Section 13.01,
> the business and affairs of the Company shall be wound up by a
> liquidating trustee (a "Liquidator") chosen by the mutual
> agreement of Givaudan and Blue Cal. In performing its duties, the
> Liquidator is authorized to sell, assign, encumber or otherwise
> dispose of any or all of the assets of the Company and to wind up

and liquidate the affairs of the Company in an orderly and business-like manner; provided, however, that, except as required under applicable law in order to satisfy any liabilities of the Company or its Subsidiaries to any creditors, the Liquidator shall not sell, distribute, exchange or otherwise dispose of the Contributed IP, Blue Cal Contributed IP, the Givaudan Contributed IP, the Blue Cal Background Licensed IP or **[REDACTED]** except in accordance with the provisions of Section 13.03 and Section 13.06 below. The Liquidator shall cause to be prepared and distributed to the Members a statement of the assets and liabilities of the Company (on a consolidated basis) as of the date of dissolution.

67.    As indicated in Section 13.01, Sections 13.03 and 13.06 of the LLC Agreement, along with Section 13.07 (all of which are redacted), provide a certain sequence, structure, and priority of distributions of BGN assets, including IP assets, to be administered by a Liquidator.

68.    BGN's assets include certain intellectual property and more than $75,000 in cash holdings, as well as several million dollars in accounts receivable, as set forth in detail in the New York Action and the California Action. *See* Exs. B and C.

69.    On or about October 29, 2018, Givaudan sent Blue Cal a notice of dissolution, which is attached as **Exhibit I**, invoking events of dissolution as defined in Sections 13.01(e) and (f).

70.    Givaudan's Notice of Dissolution embodies its election, under Section 13.01(e), to dissolve BGN after failure of the dispute resolution process set forth in Section 14.08. *See supra* ¶¶ 52-56, 61-64.

71.    Givaudan's Notice of Dissolution also embodies its election, under Section 13.01(f), to dissolve BGN after Blue Cal's failure to cure its Material Breach. *See supra* ¶¶ 55-60.

72.    On or about November 7, 2018, Blue Cal stated through its counsel, in a discussion by telephone with Givaudan's counsel regarding the Notice of Dissolution, that it

would not agree to any dissolution that followed the prescribed distribution sequence/structure, and that protracted litigation would result if Givaudan attempted to go down this path.

73.    On or about November 27, 2018, Givaudan's counsel proposed three Liquidator candidates to Blue Cal's counsel in writing, requesting a response and/or counterproposal within seven (7) days. That correspondence is attached as **Exhibit J**.

74.    Givaudan's counsel sent Blue Cal's counsel, per request, additional information on those Liquidator candidates that same day, as well as on the following day. *See* **Exhibits K**, **L**, and **M**, attached.

75.    On or about December 4, 2018, Blue Cal suggested through counsel, in another telephone call with Givaudan's counsel, that it actually would not oppose the dissolution distribution sequence/structure as prescribed in the LLC Agreement.

76.    On or about December 5, 2018, Blue Cal, through an email from its counsel, stated it had not had time to review or respond to Givaudan's proposed Liquidator candidates and that it would respond within ten (10) days. Blue Cal's counsel also stated therein that it "[did] not see the need for a 'liquidator' yet"; that the parties would have "to agree on the scope of the liquidator's duties and how payment is to be made"; that because "Givaudan insisted on freezing the bank accounts as part of the federal litigation, there is no way to pay the liquidator"; that the parties "should try to resolve as much as possible" as to dividing the assets of BGN prior to appointing a liquidator; and that "Blue Cal will not allow the assets of BGN to be squandered through unnecessary liquidator fees . . . ."

77.    On or about December 11, 2018, Givaudan, by counsel, responded by email stating that undisputed events of dissolution have occurred; that appointment of a Liquidator is a right under the LLC Agreement at this juncture; that the Liquidator's scope and the plan for

distributing BGN's assets are both defined under the LLC Agreement; that the Liquidator could be paid by Board resolution; that Givaudan would of course make reasonable good-faith efforts to conserve BGN's assets through the dissolution process; and that if Blue Cal's implied refusal to appoint or pay a Liquidator results in litigation, Givaudan will seek to recover its resulting expenses.

78.     Blue Cal has had Givaudan's Liquidator candidate proposal for approximately three weeks. To date, it has not provided any specific response or objection as to any of the candidates Givaudan proposed. It has not proposed any of its own candidates.

79.     Based on the above-described delay by Blue Cal and the ambiguous and conflicting representations by Blue Cal as to its performance of its obligations, as well as the broader context of the disputes between Givaudan and the Chen entities, Givaudan believes that Blue Cal is intentionally delaying the dissolution and distribution process.

### BGN'S ONGOING DYSFUNCTION AND DERELICTION

80.     Specifically illustrating BGN's state of dysfunction and the need for prompt appointment of a Liquidator is Mr. Chen's and/or Blue Cal's failure to respond to Givaudan's requests and inquiries concerning certain BGN intellectual property.

81.     On or about November 19, 2018 (after Givaudan's Notice of Dissolution to Blue Cal), Givaudan's inside patent counsel contacted Byron Olson, among others, requesting that Mr. Chen execute a declaration required by the U.S.P.T.O in connection with U.S. Patent Application No. 15/787,372 (the "Patent Application"). Mr. Olson is one of the Blue Cal Directors of BGN and Chief Patent Counsel and Director of Legal Affairs for Conagen. *See supra* ¶ 27.

82.     The required declaration includes a representation as to ownership of the Patent Application and is required for the U.S.P.T.O to allow the patent to issue.

83.     The LLC Agreement dictates the distribution of intellectual property upon dissolution, including the Patent Application and any patent issuing from it, which is subject to the Liquidator's oversight and administration. *See supra* ¶¶ 66-67.

84.     On December 13, 2018, BGN's U.S. patent prosecution counsel contacted Givaudan's inside counsel and Mr. Olson regarding the Patent Application and requesting that Mr. Chen execute the declaration.

85.     Givaudan's inside patent counsel reached out to Mr. Olson on that same day, and again on December 17, 2018, requesting an executed declaration from Mr. Chen.

86.     Neither Mr. Olson, Mr. Chen, nor anyone affiliated with them has responded to Givaudan's requests as to the declaration. The lack of a response and inability to file the declaration may affect or forfeit rights under the Patent Application.

87.     The fees incurred in connection with Patent Counsel's efforts and certain upcoming patent renewal fees are liabilities of BGN, which are also subject to the Liquidator's oversight and control.

88.     Among the other pending issues, the status of the Patent Application demonstrates the urgent need for a Liquidator, as well as the need for Court intervention in light of Blue Cal's lack of engagement in the dissolution and distribution process.

## COUNT 1
## DECLARATORY JUDGMENT

89.     All of the allegations in the foregoing paragraphs in this Complaint are incorporated by reference into this Count.

90.     An actual, substantial, and justiciable controversy exists as to the rights and duties of Givaudan and Blue Cal under the dissolution provisions of the LLC Agreement, in respect of

which Givaudan is entitled to a declaration of its rights and further relief, including a mandatory injunction.

91.     Despite requiring a Liquidator to be "chosen by the mutual agreement of Givaudan and Blue Cal," the LLC Agreement is not specific as to the process for agreeing to a Liquidator.

92.     Despite Givaudan's reasonable good-faith efforts to propose qualified candidates for Blue Cal's consideration, Blue Cal has not consented to any of the candidates Givaudan proposed, specified any basis for rejecting the same, or proposed its own candidates.

93.     Blue Cal's initial expression of unwillingness to engage in the dissolution procedure and to abide by the dissolution distribution provisions, combined with the parties' failure to agree on a Liquidator to date, threatens to deprive Givaudan of the rights it bargained for under the LLC Agreement.

94.     Givaudan has no remedy short of this action available to enforce the LLC Agreement.

95.     Givaudan accordingly asks this Court to declare that Givaudan is entitled to Blue Cal's good-faith participation and cooperation under the dissolution provisions of the LLC Agreement, including the distribution provisions.

96.     Specifically, Givaudan asks this Court to declare that Blue Cal, under the LLC Agreement, must engage with Givaudan in good faith to choose a Liquidator, who will then administer the dissolution of BGN according to the terms of the LLC Agreement.

97.     To effect the LLC Agreement in this respect, Givaudan further asks the Court to order Blue Cal to propose, within seven (7) days of the requested order, five or more Liquidator candidates with reasonable bankruptcy, restructuring, and/or liquidation experience who are

acceptable to Blue Cal, and if none of those candidates are acceptable to Givaudan, to repeat that process within seven (7) days of Givaudan's rejection of Blue Cal's Liquidator candidates until the parties have identified a mutually acceptable Liquidator.

98.     Givaudan asks the Court to order a speedy hearing of this declaratory judgment action pursuant to Federal Rule of Civil Procedure 57.

99.     Pursuant to 28 U.S.C.A § 2202 and Federal Rule of Civil Procedure 57, this Court, after granting Givaudan's requested declaratory relief, may retain jurisdiction for the purpose of granting "[f]urther necessary or proper relief."

100.    In light of the potential for future disputes in the dissolution and distribution process, which is demonstrated by the allegations in this Complaint, Givaudan asks the Court to retain jurisdiction over this matter to grant such further relief as may be necessary or proper to effectuate the prompt and orderly distribution of BGN's assets.

101.    Givaudan further asks for a judgment against Blue Cal in the amount of the costs and expenses incurred and to be incurred by Givaudan in connection with this action, including reasonable attorneys' fees, to which Givaudan is entitled under Section 14.07 of the LLC Agreement.

## COUNT 2
## ANTICIPATORY BREACH OF CONTRACT – SPECIFIC PERFORMANCE

### *(in the alternative to Count 1)*

102.    All of the allegations in the foregoing paragraphs in this Complaint are incorporated by reference into this Count.

103.    Blue Cal's express refusal to engage in the contractual dissolution process and its subsequent failure to agree to a Liquidator were a repudiation and anticipatory breach of the LLC Agreement.

104.    Blue Cal has not expressly retracted its repudiation of the LLC Agreement, and its silence on Givaudan's Liquidator candidate proposal continues.

105.    At the time of Blue Cal's repudiation, Givaudan was ready, willing, and able to perform under the dissolution provisions of the LLC Agreement.

106.    Givaudan is entitled to a decree of specific performance and a mandatory injunction requiring Blue Cal to perform its obligations under the dissolution provisions of the LLC Agreement in good faith, including agreeing to the appointment of a Liquidator and abiding by the dissolution distribution provisions.

107.    To effect the LLC Agreement in this respect, Givaudan further asks the Court to order Blue Cal to propose, within seven (7) days of the requested order, five or more Liquidator candidates with reasonable bankruptcy, restructuring, and/or liquidation experience who are acceptable to Blue Cal, and if none of those candidates are acceptable to Givaudan, to repeat that process within seven (7) days of Givaudan's rejection of Blue Cal's Liquidator candidates until the parties have identified a mutually acceptable Liquidator.

108.    Givaudan further asks for a judgment against Blue Cal in the amount of the costs and expenses incurred and to be incurred by Givaudan in connection with this action, including reasonable attorneys' fees, to which Givaudan is entitled under Section 14.07 of the LLC Agreement.

WHEREFORE, Givaudan demands judgment against Blue Cal:

a) Declaring that Givaudan is entitled to Blue Cal's good-faith participation and cooperation under the dissolution provisions of the LLC Agreement, including the distribution provisions;

b) Declaring that Blue Cal, under the LLC Agreement, must engage with Givaudan in good faith to choose a Liquidator, who will then administer the dissolution of BGN according to the terms of the LLC Agreement;

c) In the alternative to items (a) and (b) above, which are requested pursuant to Count 1, finding that Blue Cal's words and conduct in connection with the dissolution process are an anticipatory breach of the LLC Agreement and that Blue Cal is required to perform its obligations under the dissolution provisions of the LLC Agreement in good faith, including agreeing to the appointment of a Liquidator and abiding by the dissolution distribution provisions;

d) Issuing a mandatory injunction under which Blue Cal must propose, within seven (7) days, five or more Liquidator candidates with reasonable bankruptcy, restructuring, and/or liquidation experience who are acceptable to Blue Cal, and if none of those candidates are acceptable to Givaudan, to repeat that process within seven (7) days of Givaudan's rejection of Blue Cal's candidates until the parties have identified a mutually acceptable Liquidator;

e) Retaining jurisdiction over this matter to grant such further relief as may be proper and necessary to effectuate the relief Givaudan seeks as to the dissolution and distribution process;

f)   In the amount of the costs and expenses incurred and to be incurred by Givaudan in connection with this action, including reasonable attorneys' fees; and

g)   For such other and further relief as the Court determines to be just and appropriate.

Dated: December 19, 2018                     GOLDBERG SEGALLA LLP

                                             By: S/ Ryan G. Pitman
                                                 Christopher J. Belter
                                                 Matthew S. Trokenheim
                                                 Ryan G. Pitman
                                                 711 3rd Avenue, Suite 1900
                                                 New York, New York 10017-4013
                                                 Phone: 646.292.8700
                                                 Fax:  646.292.8701
                                                 cbelter@goldbergsegalla.com
                                                 mtrokenheim@goldbergsegalla.com
                                                 rpitman@goldbergsegalla.com

                                             *Attorneys for Plaintiff Givaudan SA*