**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

BGN TECH LLC, and GIVAUDAN SA,
Derivatively on Behalf of BGN Tech LLC,

Plaintiffs,

v.

STEVEN CHEN, and PHYTO TECH CORP. d/b/a
BLUE CALIFORNIA,

Defendants.

Index No.  653038/2018

---

## VERIFIED DIRECT AND DERIVATIVE COMPLAINT

Plaintiffs, by and through their undersigned counsel, Goldberg Segalla, LLC, state for their

complaint as follows:

### PARTIES

1.      Plaintiff BGN Tech LLC ("**BGN**") is a limited liability company organized and

existing under the laws of the State of Delaware with its principal office at 30111 Tomas,

Rancho Santa Margarita, California 92688.

2.      Plaintiff Givaudan SA ("**Givaudan**") is a company organized under the laws of

Switzerland, with a principal place of business at 5, Chemin de la Parfumerie, 1214 Vernier,

Switzerland. Givaudan has at all relevant times been a 49% owner and Member of BGN.

Givaudan has not received, been promised, or offered and will not accept any form of

compensation, directly or indirectly, for prosecuting or serving as a representative party in this

derivative action in which it is a named party except (i) such fees, costs, or other payments as

the Court expressly approves to be paid to or on behalf of such person, or (ii) reimbursement,

paid by such person's attorneys, of actual and reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of the action.

3.      Non-Party Givaudan Flavors Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1199 Edison Drive 1-2, Cincinnati, Ohio 45216. Givaudan Flavors Corporation is a subsidiary of Givaudan.

4.      Defendant Phyto Tech Corp. d/b/a Blue California ("**Blue Cal**") is a California corporation, with its principal office at 30111 Tomas, Rancho Santa Margarita, California 92688. Blue Cal has at all relevant times been a 51% owner and Member of BGN.

5.      Non-party Conagen, Inc. ("**Conagen**") is a Massachusetts corporation with a principal place of business at 13-15 Deangelo Drive, Bedford, Massachusetts 01730.

6.      Non-party Sweegen, Inc. ("**Sweegen**") is a Nevada corporation with a principal place of business at 30111 Tomas, Rancho Santa Margarita, California 92688.

7.      Defendant Steven Chen is a resident of the state of California. Chen is the chairman, CEO, and a director of BGN and has been since BGN was formed. Chen has been president of Blue Cal since 1994. Chen is Sweegen's majority shareholder, president, CEO, and CFO. Chen is a trustee and beneficiary of the Chen Family Living Trust. The Chen Family Living Trust is the majority owner of Conagen and the sole owner of Blue Cal. Chen is a founder, principal, and controlling and beneficial owner of Blue Cal, Conagen, and Sweegen.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over both defendants because they consented to this Court's jurisdiction under the terms of the mandatory forum selection clause in Section 14.11 of the Limited Liability Company Agreement of BGN Tech LLC dated February 21, 2014 (the "**BGN LLC Agreement**"), a copy of which is annexed hereto as **Exhibit A**. That section

2

FILED: NEW YORK COUNTY CLERK 06/18/2018 01:19 PM
NYSCEF DOC. NO. 1    Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 4 of 34

INDEX NO. 653038/2018
RECEIVED NYSCEF: 06/18/2018

directs any action arising out of or related to the BGN LLC Agreement to be brought in the state or federal courts in New York State located in the County of New York.

9.      Venue is proper in New York County pursuant to the same mandatory forum selection clause as referred to in the preceding paragraph, which names New York County as the venue for any action arising out of or relating to the BGN LLC Agreement.

## NATURE OF THE ACTION

10.     This action arises out of defendants' purposeful, ongoing, and unconscionable efforts to take advantage of their operational control of BGN to divert funds from BGN for defendants' own benefit and interest at the expense of plaintiffs.

11.     BGN is a joint venture of its two Members, Givaudan and Blue Cal. The joint venture was established to allow its Members to collaborate on the development, marketing, and sale of certain products.

12.     In 2017, it became clear that the joint venture was not merely a means of collaboration between Givaudan and Blue Cal, but was also a means for Chen to use his related entities and his operational control of BGN's accounting functions and accounts to siphon money from BGN at will, at the expense of BGN and Givaudan, and in contravention of Blue Cal's and Chen's duties to BGN and Givaudan.

13.     The conduct complained of herein constitutes Chen's and Blue Cal's breaches of their duty of care by causing BGN to enter into transactions to the detriment of BGN and the benefit of Chen, Blue Cal and other Chen-affiliated entities. Such actions were grossly negligent and/or knowing, willful, and culpable violations by Chen and Blue Cal of their duties to BGN and Givaudan.

3

20187826.v1

Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 5 of 34

14.     Givaudan and Blue Cal also did business directly with each other outside of the joint venture, and both companies did business with other entities controlled by Chen, namely Conagen and Sweegen. As described below, several disputes relating to these additional business relationships are the subjects of separate litigations.

15.     Givaudan initiates this action derivatively on behalf of BGN against Chen and Blue Cal to remedy their violations of law, including breaches of fiduciary duties that occurred between 2015 and the filing of this action, inclusive (the "**Relevant Period**"), each of which have caused substantial losses to BGN. Additionally, BGN brings this action directly on its own behalf against Blue Cal and Chen individually to remedy their repeated tortious acts and breaches of contracts with BGN. Plaintiffs seek compensatory and actual damages against these defendants for breach of fiduciary duty, breach of contract, fraud, and unjust enrichment. Plaintiffs also seek equitable and declaratory relief.

16.     Givaudan hereby alleges upon personal knowledge as to its own acts and upon information and belief as to all other matters, based upon, *inter alia*, an investigation conducted by its counsel, which included, among other things, the review of documents pertinent to the disputes described herein as follows.

<u>FACTS</u>

*BGN LLC AGREEMENT*

17.     On February 21, 2014, Blue Cal and Givaudan executed the BGN LLC Agreement.

18.     Givaudan contributed all of BGN's operating capital, and both Members contributed intellectual property to BGN.

4

19.     The BGN Agreement provides for a Board of Directors that consists of five (5) members as follows (the "**Board**"): (i) two (2) members designated by Givaudan (each a "**Givaudan Director**"), (ii) two (2) members designated by Blue Cal; and (iii) the individual then serving as the Chief Executive Officer (at all times, Chen, together with the two directors designated by Blue Cal (Oliver Yu and Byron Olson), collectively, the "**Blue Cal Directors**"). Ex. A § 7.02(a). Yu is also the co-founder and CEO of Conagen. Olson is also the Chief Patent Counsel and Director of Legal Affairs for Conagen. The Givaudan directors are William Marino and Christopher Thoen (collectively the "**Givaudan Directors**").

20.     During the Relevant Period, the Board has consisted of the Blue Cal Directors and the Givaudan Directors.

21.     The BGN LLC Agreement established that "the business and affairs of [BGN] and any Subsidiary of [BGN] shall be managed by the Members acting through [the Board]." Ex. A § 7.02(a). For example, the Board was authorized to decide all matters concerning (i) the relative amount of allocations and distributions among the Members pursuant to the BGN LLC Agreement, and (ii) accounting procedures and determinations, and other determinations not specifically and expressly provided for by any applicable terms of the BGN LLC Agreement. Ex. A § 10.01(a).

22.     Subject to certain critical exceptions detailed below, the BGN LLC Agreement granted the Board "full, exclusive and complete discretion, power and authority to manage, control, administer and operate the business and affairs of [BGN] and its Subsidiaries." Ex. A § 7.01.

23.     As set forth below with reference to specific provisions of the BGN LLC

Agreement, certain proposed actions by BGN, such as any transaction involving a Member of

BGN or a Member's Affiliate, required unanimous consent of the Board.

24.     Givaudan and Blue Cal are both "Member[s]" of BGN and parties to the BGN

LLC Agreement.

25.     Section 1.01 of the BGN LLC Agreement defines "Affiliate" as:

> [A]ny Person that directly or indirectly controls, is controlled by,
> or is under common control with the Person in question, except
> that neither Member nor any Affiliate of any Member shall be
> deemed to be an Affiliate of any other Member solely by virtue of
> the Member's Membership Interest. The term "Affiliated" and
> similar variations shall have correlative meanings. For purposes of
> this Agreement, "control" (including with correlative meanings,
> the terms "controlling," "controlled by" or "under common control
> with") as used with respect to any Person, shall mean the
> possession, directly or indirectly, of the power to direct or cause
> the direction of the management and policies of such Person,
> whether through the ownership of voting securities, by contract or
> otherwise.

26.     Section 7.09 of the BGN LLC Agreement defines certain matters that require

unanimous consent of the Board:

> Notwithstanding the provisions of Section 7.06 and Section 7.08,
> for so long as each Member (together with its Permitted
> Transferee Affiliates) holds a Percentage Interest of at least
> 33.33%, the Company shall not, and shall not permit any of its
> Subsidiaries to, engage in or cause any of the following actions,
> and neither the Board nor any committee thereof shall permit or
> cause the Company, or any of its Subsidiaries, to engage in, take
> or cause any such action except with the unanimous approval of
> the Board (the following enumerated actions being referred to as
> the "Significant Matters"), it being acknowledged and agreed
> that effective as of the time that any Member shall cease to hold
> a Percentage Interest of at least 33.33%, the provisions of this
> Section 7.09 shall no longer apply:
>
> . . .

6

(t) to the extent not included in the Annual Budget for such year, entry into, termination or suspension of any business projects;

(u) entry (or any subsequent amendment, waiver or other modification) by the Company (or any Subsidiary thereof) into any agreement contract or arrangement (i) with any Member or their respective Affiliates (or any director or officer of such Member or any of its Affiliates) (a "Related-Party Transaction") except for entry into the Ancillary Agreements as contemplated hereunder, (ii) providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, (iii) that may restrict the ability of the Company (or any Subsidiary thereof) to compete with any Person in the Business anywhere in the world (whether pursuant to a non-competition, non-solicitation, most favored nation or other similar arrangement), (iv) with a competitor of either Givaudan or Blue Cal or any of their respective Affiliates, (v) with any governmental authority, providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, or (vi) involving any intellectual property rights that are material to the Company (or any Subsidiary thereof);

27.     Conagen and Sweegen are under common control with Blue Cal and BGN due to Chen's ability to direct the management of all four companies by virtue of his status as president and beneficial owner of Blue Cal; CEO and chairman of BGN; majority shareholder, president, CEO, and CFO of Sweegen; trustee and beneficiary of the Chen Family Living Trust; and co-founder, director, and beneficial owner of Conagen.

28.     Under the above-cited provisions of the BGN LLC Agreement, Conagen and Sweegen are both Affiliates of Blue Cal, a Member of BGN.

29.     Section 14.04 of the BGN LLC Agreement authorizes a Member to cause BGN to enforce BGN's rights and seek remedies with respect to Related-Party Transactions entered into between BGN and an Affiliate of the other Member:

Notwithstanding anything to the contrary elsewhere in this Agreement or the Ancillary Agreements, without any consent or approval of the Board, ... (ii) Givaudan shall have the right to cause the Company to exercise the Company's rights (including all

7

rights to access and information) and enforce the Company's remedies with respect to any and all Related-Party Transactions between the Company, on the one hand, and Blue Cal or any of its Affiliates, on the other hand, including pursuant to this Agreement and the Ancillary Agreements ....

30.     Givaudan, as a Member of BGN, is accordingly entitled to cause BGN to bring this action to enforce BGN's rights and remedies with respect to the Related-Party Transactions.

### *BLUE CAL'S CONTROL OF BGN*

31.     The BGN LLC Agreement required BGN to "keep, or cause to be kept, appropriate books and records with respect to [BGN]'s business, including all books and records." Ex. A § 10.01(a).

32.     The BGN LLC Agreement also required BGN to deliver financial statements to the Members each quarter that include a balance sheet and a statement of income and cash flows. Ex. A § 10.02.

33.     BGN has no employees, but instead, uses the accounting employees of Blue Cal to perform all of the internal accounting functions of BGN.

34.     Blue Cal, under the direction of Chen, uses Blue Cal's accounting employees to keep BGN's books and records from which BGN's financial statements are created.

35.     Blue Cal, under the direction of Chen, controls and has signatory authority over BGN's bank accounts, and uses Blue Cal's accounting employees to make payments from BGN's bank accounts, including all of the improper payments described herein.

36.     Blue Cal thereby exercises control over BGN's finances under the direction of Chen.

37.     Conagen regularly does business with Blue Cal, Sweegen, BGN, and Givaudan.

38.     Sweegen regularly does business with Blue Cal, BGN, and Givaudan.

Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 10 of 34

### GIVAUDAN'S EQUITY INVESTMENT IN CONAGEN

39.     In early 2015, Givaudan and Conagen began discussing a potential equity investment in Conagen by Givaudan.

40.     On or about July 3, 2015, Conagen and Givaudan entered into a stock purchase agreement under which Givaudan invested $10 million in Conagen in exchange for a five-percent equity interest in Conagen.

41.     On or about September 15, 2016, Conagen and Givaudan, along with Blue Cal, entered into a term sheet (the "**Term Sheet**") that provided the parties "currently envision that they will negotiate in good faith and enter into one or more arrangements which will contain terms and conditions similar to those detailed below and other terms and conditions negotiated by the parties."

42.     The Term Sheet also contained a list of material "Key Terms" that the parties intended to memorialize in subsequent writings with additional terms.

43.     Key Term 1 provided that Givaudan would invest an additional $10 million in exchange for an additional five percent equity stake in Conagen.

44.     Key Term 2 provided that Conagen would provide Givaudan with exclusive rights in Conagen's specified intellectual property, which exclusivity would convert to non-exclusivity if Givaudan failed to "use reasonable efforts to commercially exploit mature IP, to an industrially viable extent, within 12 months from it being licensed to Givaudan."

45.     In reliance on Key Term 1, Key Term 2, and the other Key Terms in the Term Sheet, as well as Conagen's other representations therein and elsewhere, Givaudan advanced $10 million to Conagen by wire transfer during the week following the execution of the Term Sheet (the "**Advance**").

Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 11 of 34

46. Givaudan and Conagen subsequently began negotiating agreements based on the Term Sheet.

47. In October 2016, Conagen prepared drafts of an intellectual property licensing agreement, which included a proposed term making Givaudan's intellectual property exclusivity dependent on Givaudan developing certain immature intellectual property to the point of readiness for commercialization.

48. This proposed term was contrary to Key Term 2 of the Term Sheet, which only required that Givaudan use commercially reasonable efforts to exploit mature intellectual property that was ready for commercialization.

49. The only conditions imposed on exclusivity in the Term Sheet were embodied in Key Term 2. Neither Key Term 2 nor any other provision of the Term Sheet required Givaudan to develop any immature intellectual property that was not ready for commercialization.

50. Givaudan provided a revised draft of the intellectual property licensing agreement to Conagen and stated that the draft provided by Conagen was inconsistent with the Term Sheet in that the Conagen draft required Givaudan to develop immature intellectual property that was not ready for commercialization.

51. Shortly thereafter, Conagen's outside counsel informed Givaudan that Conagen was standing down on negotiations in furtherance of the Term Sheet.

52. No agreements contemplated in the Term Sheet were executed by Conagen and Givaudan.

53. After it became clear that the parties had reached an impasse on finalizing the intellectual property and exclusivity agreement under the Term Sheet, Givaudan requested a return of the Advance, and an opportunity to redeem its original 5% investment in Conagen.

54. Chen agreed to have Conagen return the Advance and informed Givaudan that Conagen had identified an investor to take out Givaudan's 5% interest, but has not yet done either at the time of the filing of this pleading. The Advance is the subject of an action pending in the United States District Court for the Southern District of New York captioned *Givaudan SA v. Conagen Inc.*, No. 18-cv-3588.

### THE GREEN NOTE 1 PROJECT

55. In 2016, Givaudan Flavors Corporation signed a joint development agreement with a third party for the development of a biological process to produce a certain ingredient (the "Third-Party R&D").

56. Givaudan disclosed the existence of the third-party joint development agreement to the Blue Cal Directors at multiple BGN Board meetings, including on or about November 1, 2016.

57. In those Board presentations, Givaudan stated its intention that once the Third-Party R&D was completed, Givaudan would engage Conagen to do further downstream processing and scale up the results of the Third-Party R&D to manufacture and sell the ingredient to Givaudan.

58. On or about June 23, 2017, Givaudan Flavors Corporation entered into a confidentiality agreement with Conagen and disclosed confidential information necessary for Conagen to evaluate its capability to scale up the results of the Third-Party R&D.

59. Upon learning the identity of the third party performing the Third-Party R&D, Chen decided that the relationship between Givaudan Flavors Corporation and the third party was against his personal interest and embarked on a campaign to punish Givaudan for the perceived slight.

11

20187826.v1

60.    On July 10, 2017, Chen called a special meeting of the Board via email to seek Board approval for BGN to enter into an agreement with Conagen to have Conagen develop a biological process to produce the same ingredient as the Third-Party R&D. This prospective project was known as the Green Note 1 Project.

61.    In the same July 10, 2017 email, Chen attached a draft of a board resolution for the Green Note 1 Project under which BGN would pay Conagen $4,500,000.

62.    In the July 10, 2017 email, Chen did not hide the retributive purpose of the Green Note 1 Project, stating:

> Many thanks to the voluntary call to Oliver this morning from Thomas Kirsch that Givaudan has been working with [a third party] on 'Green Note 1'. That is very disturbing news for me since we have been discussing it at BGN board meetings for the past 3 years. It was shocking to me. I wonder how many projects that we have been discussing at BGN with BGN IP but actually [third parties]... are developing for Givaudan without noticing us as your partner such as these *[sic]* 'Green Note' project. **The happy marriage of BGN suddenly seems like the movie 'sleeping with the enemy'.** For sure Blue California and Conagen have been very royal *[sic]* to BNG *[sic]* marriage without offering any R/D services to Givaudan's competitors because we have been committed to reaching the '50th years' *[sic]* anniversary with Givaudan."

(Emphasis added).

63.    On or about July 11, 2017, Thoen and Marino emailed the Board voting "no" to the Green Note 1 Project. Thoen noted in his email that Givaudan expected the Third-Party R&D to be complete within the next two months and stated that it did not make sense to "start a completely new project from scratch, as proposed in the current Board Resolution, to essentially repeat what [the third party] was already going to deliver and spend 4.5MM$." Instead, Thoen stated, "[w]hat makes sense is to build on the [Third-Party R&D] and have Conagen focus on the remaining work for the down stream process development, scale-up and manufacturing."

64.     On July 12, 2017, Chen acknowledged the Givaudan Directors "no" votes to the Green Note 1 Project.

65.     The Blue Cal Directors all voted in support of the Green Note 1 Project.

66.     Despite the lack of unanimous consent, on July 25, 2017, Chen sent an email to the Board stating, "I will continue implementing the resolution of 'Green Note' projects for the best interest of BGN-JV."

67.     Later in July 2017 and again in August 2017, Givaudan wrote to Chen reiterating that the Givaudan Directors voted "no" to the Green Note 1 Project and advising that advancing the project without unanimous Board consent was a breach of the BGN LLC Agreement.

68.     Chen did not respond.

69.     Sometime after the Green Note 1 Project Board resolution failed to pass by unanimous consent, Chen followed through on his intent to punish Givaudan for perceived slights by transferring $1,000,000 from BGN to Conagen, purportedly for Conagen to engage in work on the Green Note 1 Project.

70.     On August 1, 2017, the Givaudan Directors discovered that BGN made a payment of $1,000,000 to Conagen for the Green Note 1 Project.

71.     Givaudan made several attempts to have Chen reverse the transaction, including sending Blue Cal notices of breach and demands to cure under the BGN LLC Agreement on August 9, 2017; January 25, 2018; and April 23, 2018.

72.     Blue Cal and the Blue Cal directors have ignored all such requests.

73.     The Green Note 1 Project required unanimous Board consent under BGN LLC Agreement §§ 7.09(t) and 7.09(u), as set forth above in paragraphs 22-28, because it was not included in the Annual Budget for 2017 or 2018 and it was a Related-Party Transaction.

13

Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/26/18   Page 15 of 34

74.     On information and belief, Conagen has not performed any work on the Green Note 1 Project research and development.

75.     Givaudan has requested that Conagen return the $1,000,000 for the Green Note 1 Project.

76.     Chen, on behalf of Conagen, has promised to return the $1,000,000 for the Green Note 1 Project but has not done so to date, despite repeated requests from Givaudan.

77.     The Green Note 1 Project is a subject of an action by BGN, which Givaudan caused BGN to file pursuant to authority under BGN LLC Agreement § 14.04 (see paragraphs 29 and 30 above), against Conagen and Sweegen (which are not parties to the BGN LLC Agreement and not subject to the forum selection clause therein), pending in the Superior Court of the State of California for the County of Orange (the "California Action").

*INVENTORY PURCHASE-SALE TRANSACTIONS*

78.     One of the functions of BGN in the relationship between Blue Cal and Givaudan is for Blue Cal to sell ingredients to BGN and for BGN to resell those ingredients to Givaudan. BGN never takes physical possession of the ingredients.

79.     In the context of this relationship, Chen and Blue Cal used their control of BGN's accounting functions and bank accounts to cause additional unauthorized payments from BGN to Blue Cal and to cause BGN's accounting records to mischaracterize unearned and unauthorized payments.

80.     First, Chen and Blue Cal caused real payments by BGN to Blue Cal for phantom inventory transfers from Blue Cal to BGN. They did so by booking an inventory balance on BGN's balance sheet as an asset and then having BGN pay Blue Cal for that purported inventory. Chen and Blue Cal have been entering non-existent inventory onto BGN's Balance

20187826.v1

Sheet since August 2015. As of May 31, 2018, BGN's Balance Sheet reflected a phantom

inventory of $571,840 for which BGN paid Blue Cal. Blue Cal, at the direction of Chen, has

used those false entries for non-existent inventory to justify causing BGN to pay Blue Cal for

sales of the non-existent inventory.

81.    Second, Chen and Blue Cal caused BGN to simply overpay Blue Cal for actual

sales of ingredients. BGN's balance sheet reflects an overpayment for ingredients of $831,000.

82.    Third, in January 2018, Chen and Blue Cal inserted another of their Affiliates,

Sweegen, into the middle of the transactional relationship. Up until late 2017, BGN paid Blue

Cal for the ingredients it purchased from Blue Cal, and Givaudan paid BGN for the ingredients

it purchased from BGN. In January 2018, the Board agreed to change the procedure to remove

BGN from the middle of the transaction and replace it with SWEEGEN.

83.    Following the change in procedure, instead of Blue Cal selling to BGN and BGN

selling to Givaudan, Blue Cal was to sell to Sweegen, and Sweegen to Givaudan. However, the

agreed upon procedure was not followed. Instead, Blue Cal continued to sell ingredients to

BGN, BGN sold the ingredients to SWEEGEN, and SWEEGEN sold the ingredients to

Givaudan.

84.    Under the modified purchase-sale transactions, BGN has paid Blue Cal for certain

ingredient purchases, and Givaudan has paid Sweegen for corresponding purchases, but

Sweegen has not paid BGN for any of its purchases since the procedure was modified in

January 2018.

85.    Blue Cal and Sweegen have accordingly been enriched by the sale of ingredients

to Givaudan while BGN has been impoverished by Sweegen's failure to pay BGN for such

corresponding transactions.

20187826.v1

86.     As of May 31, 2018, BGN's balance sheet reflects a $1,193,320 receivable from Sweegen that Sweegen has thus far refused to pay. This unpaid receivable from Sweegen, along with the Green Note 1 Project, is also a subject of the California Action.

87.     Fourth, BGN entered into an arrangement to purchase an ingredient called Vanillin from Blue Cal, which BGN would in turn re-sell to Givaudan. The agreed upon arrangement was as follows: (1) BGN pre-paid $360,000 to Blue Cal; (2) Blue Cal would use the pre-paid funds to acquire ferulic acid, a necessary ingredient to produce Vanillin; (3) once purchased, Blue Cal would use ferulic acid to produce the Vanillin and provide it to BGN. However, due to a technical issue with the Vanillin produced by Blue Cal, Blue Cal only produced a small amount of the Vanillin, and sold the remainder of the ferulic acid to a third party. Blue Cal did not return to BGN the remaining portion of its prepayment. BGN's balance sheet shows the prepayment of $346,655 as an asset. Chen and Blue Cal have indicated that they have no intention of ever producing the Vanillin, and has not refunded the $346,655 to BGN.

88.     In total, Chen and Blue Cal diverted $1,000,000 from BGN to Conagen, $1,749,495 from BGN to Blue Cal, and $1,193,320 from BGN to Sweegen.

89.     The purchase-sale transactions between and among Blue Cal, BGN, Givaudan, and Sweegen are Related-Party Transactions under the BGN LLC Agreement provisions as set forth above in paragraphs 22-28.

90.     The Green Note 1 Project transaction and the Related-Party Transactions comprising BGN's overpayment of Blue Cal for ingredients, BGN's prepaid purchase of Vanillin from Blue Cal, and BGN's uncompensated sales to Sweegen, as detailed above in paragraphs 78-89, are hereinafter referred to collectively as the "**Insider Transactions.**"

Case 1:18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 18 of 34

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

91.    Plaintiff Givaudan brings this action derivatively in the right and for the benefit of

BGN to redress injuries suffered, and to be suffered, by BGN as a direct result of the breaches

of fiduciary duty, the implied covenant of good faith and fair dealing, and the BGN LLC

Agreement, as well as fraud by Chen and Blue Cal.

92.    This is not a collusive action to confer jurisdiction on this Court that it would not

otherwise have.

93.    Plaintiff Givaudan will adequately and fairly represent the interests of BGN in

enforcing and prosecuting its rights.

94.    Plaintiff Givaudan has been an owner and Member of BGN during all times

relevant to Chen's and Blue Cal's wrongful course of conduct alleged herein.

95.    The current Board of Directors of BGN consists of the following five individuals:

Chen, Olsen, Yu, Thoen, and Marino. Plaintiff has not made any demand on the present Board

of Directors of BGN to institute this action because such a demand would be a futile, wasteful

and useless act.

96.    As a result of their access to and review of internal corporate documents;

conversations and connections with other corporate officers, employees and directors; and

attendance at management and Board meetings, each of the Blue Cal Directors had an

obligation to exercise due care and good faith in abiding by the BGN LLC Agreement and to

not act outside the authority provided for in the same or to allow BGN's accounting records to

be falsified to cover up the Insider Transactions.

17

20187826.v1

97.     The Blue Cal Directors are not disinterested or independent because each holds high-level positions at Blue Cal, Conagen, and Sweegen—the entities alleged to have received the benefits of the Insider Transactions.

98.     Indeed, Chen is a trustee and beneficiary of the trust that owns 100% of Blue Cal and a majority of Conagen, and is a majority shareholder of Sweegen. Yu, apart from being on the Board of BGN, is also the Co-founder and CEO of Conagen. Likewise, Olsen, in addition to serving as a BGN Board member, has also served as chief patent counsel and director of legal affairs for Conagen since March 2016 and is a member of Conagen's executive management team. In that capacity, Olsen reports to Yu.

99.     Chen as the beneficial owner of Blue Cal, Conagen, and Sweegen directly benefits from all payments to any of those companies. Yu and Olson obtain and rely on compensation from Conagen, and directly benefit from the diversion of funds from BGN to Conagen and more generally from their loyalty to Chen. As such, the Blue Cal Directors are unable to prosecute the claims alleged herein as to do so would jeopardize each of the Blue Cal Directors personal financial compensation.

100.     The Blue Cal Directors, because of their interrelated business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board from taking the necessary and proper action on behalf of BGN as requested herein.

101.     In order to bring this suit, the Blue Cal Directors would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

102.     Thus, the Blue Cal Directors cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because

18

they are interested personally in the outcome as it is their actions that have subjected BGN to millions of dollars of losses.

103.   This lack of independence renders the Blue Cal Directors incapable of impartially considering a demand to commence and vigorously prosecute this action.

104.   BGN has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Blue Cal Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for BGN any part of the damages BGN suffered and will suffer thereby.

105.   Based on the allegations herein, specifically the fact that Chen and Blue Cal moved forward with funding the Green Note 1 Project despite not having unanimous approval from the Board as required, and the Blue Cal Directors stood idle while all of the Insider Transactions were designed and implemented to benefit Chen and his Affiliates, it is apparent that the Blue Cal Directors are self-interested and lack independence.

106.   Further, the Blue Cal Directors could not independently consider a pre-suit demand for litigation because doing so would require them to scrutinize their own conduct relating to the Insider Transactions. Therefore, it strains reason to believe that Blue Cal Directors could act independently to evaluate the merits of bringing a legal action against any of the defendants if the director participated in the challenged misconduct.

107.   The Blue Cal Directors' inability to evaluate the merits of Plaintiffs' allegations is underscored by the fact that they have refused to act or participate in Givaudan's resolution efforts. Unfortunately, Givaudan's efforts to seek Board-level reform without need for litigation were rebuffed time and again.

108. Most recently, after Givaudan wrote to Chen and Blue Cal again on April 23, 2018 in an attempt to resolve the disputes over the Insider Transactions, on May 1, 2018, Blue Cal provided new financial statements that showed additional funds had subsequently been siphoned. With knowledge of the dispute, the Blue Cal Directors continue to look the other way while Chen and Blue Cal loot BGN.

109. Accordingly, demand is futile, and thus excused.

### FIRST CAUSE OF ACTION

*Breach Of Fiduciary Duty of Care*
*(Givaudan Derivatively on Behalf of BGN against Chen and Blue Cal)*

110. Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

111. By reason of their respective statuses as a Member and as an officer, director and/or fiduciary of BGN, Blue Cal and Chen owe to BGN and Givaudan a fiduciary duty of care that requires them to discharge their duties under the BGN LLC Agreement in good faith.

112. To discharge their duties, Chen and Blue Cal are required, among other things:

    a.    to ensure that BGN complied with its legal obligations and requirements, including acting only within the scope of its legal authority; and

    b.    to ensure BGN accurately accounted for financial transactions with Blue Cal, Conagen, and Sweegen.

113. BGN and Givaudan have suffered damages due to the conduct of Chen and Blue Cal as detailed above. The claims asserted herein are asserted on behalf of BGN to recover the damages sustained as a result of the intentional misconduct of Chen and Blue Cal.

114. Section 9.01 of the BGN LLC Agreement limits the liability of "Covered Persons"—defined in the BGN LLC Agreement as a "Member, Director, officer or Affiliate of

any Member," among others—for certain good faith acts performed pursuant to the BGN LLC Agreement. Section 9.01 also contains a purported waiver by the Members and BGN of any and all fiduciary duties beyond the duties and obligations expressly set forth in the BGN LLC Agreement.

115.   Section 9.01, however, expressly preserves liability for conduct constituting gross negligence, willful misconduct, fraud or knowing violation of law or the BGN LLC Agreement.

116.   Section 9.02 of the BGN LLC Agreement limits the liability of BGN's directors for mistakes or errors in judgment believed in good faith to be within their scope of authority under the BGN LLC Agreement.  Section 9.02 also provides that actions by a director in the interests of the Member who appointed him or her will not be a basis for breach of the fiduciary duty of loyalty.

117.   Section 9.02, however, does not eliminate liability for BGN's directors for intentional misconduct. It expressly preserves liability for conduct constituting gross negligence, willful misconduct, fraud or knowing violation of law or the BGN LLC Agreement. It also defines a director's duty of care as discharging their duties under the BGN LLC Agreement in good faith.

118.   The above-detailed conduct of Blue Cal (a Covered Person under Section 9.01) and Chen (a Covered Person under Section 9.01 and a director as relevant to Section 9.02) was gross negligence, willful misconduct, fraud and/or a knowing violation of the BGN LLC Agreement.

119.   Blue Cal and Chen, by the above-detailed conduct, failed to carry out their obligations under the BGN LLC Agreement in good faith.

120. As such, this conduct is not excused by Sections 9.01 or 9.02 and was a breach of Blue Cal's and Chen's fiduciary duty of care to BGN as defined by the BGN LLC Agreement.

121. The conduct detailed above was not due to an honest error of judgment, but to Chen's and Blue Cal's bad faith and willful disregard of their duties and of the rights and obligations under the BGN LLC Agreement. Their conduct cannot be justified as valid acts of business judgment because they knowingly engaged in conduct not authorized under the BGN LLC Agreement for their own benefit and to the harm of BGN and Givaudan.

122. Chen and Blue Cal have individually or in concert breached their fiduciary duties under the BGN LLC Agreement by

    a. intentionally causing, authorizing, or allowing BGN to enter into the Insider Transactions with Blue Cal and its Affiliates Conagen and Sweegen that they knew were not properly authorized by the Board or were fraudulent with respect to BGN;

    b. knowingly and intentionally causing, authorizing, or allowing the diversion of money from BGN to Blue Cal and its Affiliates Conagen and Sweegen via the Insider Transactions; and,

    c. knowingly and intentionally causing, authorizing, or allowing the cover up of the Insider Transactions through false entries in BGN's books and records.

123. BGN has suffered and will suffer injury as a result of Chen's and Blue Cal's misconduct and is entitled to an award of damages to be proven at trial but not less than $3,942,815, plus attorneys' fees and costs incurred in litigating this action.[1]

---

[1] As noted above, BGN has initiated the California Action against Conagen and Sweegen to seek a remedy for their conduct described herein. To the extent that the action is successful in recovering the $1,000,000 paid to Conagen as part of the Green Note 1 Project, and the $1,193,320 owed by Sweegen, this Complaint will be amended accordingly.

## SECOND CAUSE OF ACTION

### *Aiding and Abetting Breach Of Fiduciary Duty*
### *(Givaudan Derivatively on Behalf of BGN against Chen and Blue Cal)*

124.  Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

125.  Chen and Blue Cal breached their fiduciary duties by intentionally causing, authorizing, or allowing (1) BGN to enter into the unauthorized Insider Transactions with Blue Cal and its Affiliates; (2) the diversion of money from BGN to Blue Cal and its Affiliates, and (3) the cover up of the Insider Transactions through false entries in BGN's books and records.

126.  Chen and Blue Cal knowingly gave substantial assistance and encouragement to each other and participated in the intentional breaches of fiduciary duty in the manner described above.

127.  BGN has suffered and will suffer injury as a result of Chen's and Blue Cal's misconduct and is entitled to an award of damages to be proven at trial but not less than $3,942,815, plus attorneys' fees and costs incurred in litigating this action.

## THIRD CAUSE OF ACTION

### *Breach of Implied Covenant of Good Faith and Fair Dealing*
### *(Givaudan Derivatively on Behalf of BGN against Blue Cal)*

128.  Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

129.  The BGN LLC Agreement includes the implied covenant of good faith and fair dealing pursuant to which the parties bound by and acting under those contractual obligations were prohibited, at a minimum, from:

23

    a.  engaging in transactions and actions that would essentially pillage BGN for the

exclusive benefit of Chen and Blue Cal and to the detriment of BGN and

Givaudan;

    b.  using their control of BGN's accounting functions to falsify BGN's books and

records; and,

    c.  using their control of BGN's accounts to make unauthorized payments to

themselves and their Affiliates.

130. The BGN LLC Agreement does not expressly prohibit Blue Cal from making false entries in BGN's books and records, nor does it expressly prohibit Blue Cal from causing BGN to pay Blue Cal on those false entries.

131. Nevertheless, it was the reasonable expectation of the parties that Blue Cal would not use its operational control of BGN's books and records and accounts to concoct reasons to have BGN pay Blue Cal and then cause BGN to do so without authorization.

132. The implied covenant of good faith and fair dealing in the BGN LLC Agreement requires the implication of a contractual term that prohibits BGN from engaging in the conduct described herein.

133. Blue Cal has breached that implied covenant of good faith and fair dealing through the acts and omissions alleged above.

134. BGN has suffered and will suffer injury as a result of Blue Cal's misconduct and is entitled to an award of damages to be proven at trial but not less than $3,942,815, plus attorneys' fees and costs incurred in litigating this action.

20187826.v1

## FOURTH CAUSE OF ACTION

### *Violation Of Section 7.09 Of The BGN LLC Agreement*
### *(Givaudan Derivatively on Behalf of BGN against Blue Cal)*

135.   Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

136.   The Green Note 1 Project between BGN and Conagen was a Significant Matter requiring unanimous approval of the Board.

137.   The Green Note 1 Project between BGN and Conagen was made without the consent of all Board members.

138.   Nonetheless, Chen and Blue Cal caused BGN to proceed with the Green Note 1 Project between BGN and Conagen despite the fact that they knew the Board did not give its unanimous approval.

139.   Chen and Blue Cal caused BGN to proceed with the Green Note 1 Project by paying Conagen $1,000,000 despite their knowledge that the transaction required but did not obtain unanimous approval of the Board.

140.   Chen and Blue Cal caused BGN to proceed with the Green Note 1 Project by directing BGN to pay Conagen $1,000,000 despite their knowledge that the transaction required but did not obtain unanimous approval of the Board.

141.   Chen and Blue Cal failed to act in good faith, willfully ignoring and knowingly violating the terms of the BGN LLC Agreement by allowing the Green Note 1 Project between BGN and Conagen to proceed without the consent of the entire Board.

142.   Accordingly, the Green Note 1 Project between BGN and Conagen was invalid as a matter of law.

143.  Plaintiff has suffered and will suffer injury as a result of the unauthorized Green Note 1 Project and is entitled to an award of damages to be determined at trial but not less than $1,000,000.

## FIFTH CAUSE OF ACTION

### *Declaratory and Injunctive Relief*
### *(Givaudan Derivatively on Behalf of BGN against Chen and Blue Cal)*

144.  Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

145.  Chen and Blue Cal breached their fiduciary duties by executing the Insider Transactions without obtaining the consent of the entire Board, through false accounting entries, and through transactions entered into knowingly without a corporate purpose or consideration.

146.  Chen and Blue Cal failed to act in good faith, willfully ignoring and knowingly violating the terms of BGN LLC Agreement by allowing the Insider Transactions to proceed.

147.  Unanimous board approval was required for BGN to enter into the Green Note 1 Project. Because of the lack of unanimous consent, the Green Note 1 Project transaction with Conagen is invalid and unenforceable as a matter of law.

148.  Chen and Blue Cal were required to operate BGN's accounting functions in good faith, and not by falsifying records and making payments or transferring assets to Chen's Affiliates without any corporate purpose or consideration. Through the Insider Transactions, Chen and Blue Cal violated their duties to BGN and the implied covenant of good faith and fair dealing inherent in the BGN LLC Agreement.

149.  There is a palpable and concrete controversy caused by the actions of Chen and Blue Cal and regarding their ability to cause BGN to engage in unauthorized transactions, to falsify BGN's books and records, and to cause BGN to divert money to Blue Cal and its

20187826.v1

affiliates, all in violation of the BGN LLC Agreement, the implied covenant of good faith and fair dealing inherent in the BGN LLC Agreement, and Chen's and Blue Cal's fiduciary duties to BGN.

150. In the BGN LLC Agreement, the Members acknowledge that any violation of the BGN LLC Agreement may cause irreparable injury to BGN or the non-breaching party for which monetary damages are inadequate, difficult to compute, or both. The Members further acknowledge that BGN shall be entitled to injunctive relief to remedy such violations.

151. To afford relief from the controversy Defendants' actions have caused, Plaintiff is entitled to a declaratory judgment that the Insider Transactions are invalid and unauthorized, a permanent injunction barring Blue Cal and the Interested Director Defendants from taking any actions that require unanimous consent without first obtaining such consent, and a permanent injunction barring Blue Cal and the Interested Director Defendants from causing BGN to make any payments to Blue Cal or its Affiliates without obtaining the unanimous consent of the Board.

## SIXTH CAUSE OF ACTION

### *Waste of Corporate Assets*
### *(Givaudan Derivatively on Behalf of BGN against Chen)*

152. Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

153. Chen caused BGN to enter into the transaction with Conagen, despite lack of unanimous consent and without any corporate purpose or consideration.

154. Chen caused BGN to pay Blue Cal for inventory that Chen knew did not exist.

27

155.    Chen caused BGN to insert Sweegen into a transaction between BGN and Givaudan without any legitimate corporate purpose, knowing Sweegen would not pay BGN, and in order to deprive BGN of payment for the ingredients.

156.    As a result of Chen's acts as described herein, BGN wasted its valuable assets by entering into the Insider Transactions.

157.    As a result of the waste of corporate assets, Chen is liable to BGN.

158.    Plaintiff has suffered and will suffer injury as a result of the waste of corporate assets and is entitled to an award of damages to be determined at trial but not less than $3,942,815.

## SEVENTH CAUSE OF ACTION

### *Fraud*
### *(Givaudan Derivatively on Behalf of BGN against Chen and Blue Cal)*

159.    Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

160.    Chen and Blue Cal used their operational control of BGN's accounting functions and bank accounts to make false entries into BGN's accounting records, that they knew were false, and then they caused BGN to make payments to Blue Cal on those false entries.

161.    Since August 2015, Chen and Blue Cal has caused false entries to be entered into the books and records of BGN to show the existence of inventory received by BGN from Blue Cal that did not actually exist and that was not provided by Blue Cal to BGN.

162.    Chen and Blue Cal knew that the entries were false because they knew that Blue Cal did not send the non-existent inventory, and that BGN did not receive the non-existent inventory.

28

20187826.v1

163.    Since August 2015, Chen and Blue Cal caused BGN to pay Blue Cal for the non-existent inventory.

164.    Plaintiff has suffered and will suffer injury as a result of the fraud and is entitled to an award of damages to be determined at trial but not less than $571,840.

## EIGHTH CAUSE OF ACTION

### *Aiding and Abetting Fraud*
### *(Givaudan Derivatively on Behalf of BGN against Chen and Blue Cal)*

165.    Plaintiff Givaudan repeats and incorporates by reference each of the allegations set forth above.

166.    Chen and Blue Cal have operational control of BGN's accounting functions and bank accounts.

167.    Chen and Blue Cal use that operational control to cause Blue Cal's accounting employees to make false entries into BGN's accounting records that both Chen and Blue Cal knew were false.

168.    Chen and Blue Cal then direct Blue Cal's accounting employees to cause BGN to make payments to Blue Cal on those false entries.

169.    Since August 2015, Chen and Blue Cal directed Blue Cal's accounting employees to make false entries into the books and records of BGN to show the existence of inventory received by BGN from Blue Cal that did not actually exist and that was not provided by Blue Cal to BGN.

170.    Chen and Blue Cal knew that the entries were false because they did not send the inventory to BGN, and knew that BGN does not have any warehouses or the ability to possess inventory.

29

171.   Since August 2015, Chen and Blue Cal have directed Blue Cal's accounting employees to cause BGN to pay Blue Cal for the non-existent inventory.

172.   Plaintiff has suffered and will suffer injury as a result of the fraud and Chen's aiding and abetting the fraud and is entitled to an award of damages to be determined at trial but not less than $571,840.

## NINTH CAUSE OF ACTION

### *Unjust Enrichment*
### *(BGN Directly Against Blue Cal)*

173.   Plaintiff BGN repeats and incorporates by reference each of the allegations set forth above.

174.   BGN entered into the Insider Transactions with Blue Cal by which BGN purchased ingredients from Blue Cal.

175.   Blue Cal obtained payments from BGN in excess of the value of the goods and services provided to BGN by Blue Cal.

176.   Blue Cal retained the payments in violation of BGN's rights.

177.   Blue Cal was thereby unjustly enriched at the expense of and to the detriment of BGN.

178.   BGN seeks restitution from Blue Cal in the form of an order of this Court disgorging all profits, benefits, and other compensation obtained by Blue Cal from the wrongful conduct of Blue Cal and Chen described herein, in an amount to be determined at trial but no less than $1,749,495.

\*      \*      \*

30

WHEREFORE, plaintiff demands judgment as follows:

a. On the First Cause of Action, an award of money damages against Chen and Blue Cal for their breach of fiduciary duties, plus interest, attorney's fees and costs;

b. On the Second Cause of Action, an award of money damages against Chen and Blue Cal for their aiding and abetting breach of fiduciary duties, plus interest, attorney's fees and costs;

c. On the Third Cause of Action, an award of money damages against Blue Cal for its violation of the implied covenant of good faith and fair dealing inherent in the BGN LLC Agreement, plus interest, attorney's fees and costs;

d. On the Fourth Cause of Action, an award of money damages against Blue Cal for its violation of the BGN LLC Agreement, plus interest, attorney's fees and costs;

e. On the Fifth Cause of Action, a declaratory judgment that the Insider Transactions are invalid and unauthorized, a permanent injunction barring Chen and Blue Cal from taking any actions that require unanimous consent without first obtaining such consent, and a permanent injunction barring Blue Cal and the Interested Director Defendants from causing BGN to make any payments to Blue Cal or its Affiliates without obtaining the unanimous consent of the Board;

f. On the Sixth Cause of Action, an award of money damages against Chen for his waste of corporate assets, plus interest, attorney's fees and costs;

g. On the Seventh Cause of Action, an award of money damages against Chen and Blue Cal for their fraud, plus interest, attorney's fees and costs;

Case 1.18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 33 of 34

    h.    On the Eighth Cause of Action, an award of money damages against Chen and

Blue Cal for their aiding and abetting fraud, plus interest, attorney's fees and

costs;

    i.    On the Ninth Cause of Action, an award of money damages against Blue Cal for

unjust enrichment, plus interest, attorney's fees and costs; and,

    j.    Granting such other relief as the Court deems just and proper.

Dated: New York, New York
       June 18, 2018

Christopher J. Belter, Esq.
Matthew S. Trokenheim, Esq.
GOLDBERG SEGALLA LLP
*Attorneys for BGN Tech LLC
and Givaudan SA*
711 Third Avenue, Suite 1900
New York, NY 10017
Tel.: 646.292.8700

32

Case 1.18-cv-12027-JGK   Document 1-2   Filed 12/20/18   Page 34 of 34

## ATTORNEY VERIFICATION

The undersigned, Matthew S. Trokenheim, an attorney duly admitted to practice in the Courts of the State of New York, affirms:

I am the attorney of record for Plaintiffs BGN Tech LLC and Givaudan SA in the within action. I have read the foregoing Verified Direct and Derivative Complaint and know the contents thereof, that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The grounds for my belief as to all matters not stated upon my knowledge are nvestigations, which I have made or have caused to be made concerning the subject matter of this action, and statements of parties and/or witnesses made herein. This verification is not made by Plaintiffs because they are not within the county where the affirmant maintains his office.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
      June 18, 2018

_____
Matthew S. Trokenheim

20187826.v1