# EXHIBIT C

| | |
|---|---|
| JOHN F. STEPHENS (SBN 178301)<br>*jstephens@goldbergsegalla.com*<br>STEVEN S. VAHIDI (SBN 283951)<br>*svahidi@goldbergsegalla.com*<br>GOLDBERG SEGALLA LLP<br>Mailing Address:  P.O. Box 957, Buffalo, NY 14201<br>777 S. Figueroa Street, Suite 1900<br>Los Angeles, CA 90017<br>Telephone:    213.415.7200<br>Facsimile:     213.415.7299<br><br>Attorneys for Plaintiff<br>BGN TECH LLC | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**06/18/2018**<br>Clerk of the Superior Court<br>By Dollie Campos, Deputy Clerk |

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ORANGE

| | |
|---|---|
| BGN TECH LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>CONAGEN INC., and SWEEGEN, INC.,<br><br>    Defendants. | CASE NO. 30-2018-00999862-CU-BC-CJC<br>Judge Geoffrey Glass<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BGN TECH LLC ("BGN") alleges as follows against Defendants CONAGEN INC. ("CONAGEN") and SWEEGEN, INC. ("SWEEGEN").

### PARTIES

1. Plaintiff BGN is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 30111 Tomas, Rancho Santa Margarita, Orange County, California 92688.

2. Non-party Givaudan SA ("Givaudan") is a company organized under the laws of Switzerland, with a principal place of business at 5, Chemin de la Parfumerie, 1214 Vernier, Switzerland. Givaudan has at all relevant times been a 49% owner and member of BGN.

---
COMPLAINT
BGN TECH LLC V. CONAGEN INC. AND SWEEGEN, INC.

9115508.v1

3. Non-Party Givaudan Flavors Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1199 Edison Drive 1-2, Cincinnati, Ohio 45216. Givaudan Flavors Corporation is a subsidiary of Givaudan.

4. Non-party Phyto Tech Corp. d/b/a Blue California ("Blue Cal") is a California corporation located at 30111 Tomas, Rancho Santa Margarita, California 92688. Blue Cal has at all relevant times been a 51% owner and member of BGN.

5. Defendant CONAGEN is a Massachusetts corporation with a principal place of business at 13-15 Deangelo Drive, Bedford, Massachusetts 01730.

6. Defendant SWEEGEN is a Nevada Corporation with a principal place of business at 30111 Tomas, Rancho Santa Margarita, Orange County, California 92688.

7. Non-party Steven Chen ("Chen") is a resident of the state of California. Chen is Chairman, Chief Executive Officer, and a Director of BGN and has been since BGN was formed. Chen has been president of Blue Cal since 1994. Chen is SWEEGEN's majority shareholder, President, CEO, and Chief Financial Officer. Chen is a trustee and beneficiary of the Chen Family Living Trust. The Chen Family Living Trust is the majority owner of CONAGEN and the sole owner of Blue Cal. Chen is a founder, principal, and controlling and beneficial owner of Blue Cal, CONAGEN, and SWEEGEN.

## VENUE

8. Orange County is the proper venue for this action because Defendant SWEEGEN's principal place of business is in Orange County, because Plaintiff BGN's office is in Orange County, and because the contracts, transactions, and courses of dealing herein alleged between BGN on the one hand and SWEEGEN and CONAGEN on the other hand were made, implied, occurred, and or were performable, in whole or in part in Orange County.

## NATURE OF THE ACTION

9. This action concerns misappropriations of certain monies from BGN to CONAGEN and SWEEGEN, as orchestrated by Chen for his own benefit, and for the benefit of his companies CONAGEN and SWEEGEN, to the detriment of BGN.

10. BGN was created by a Limited Liability Company Agreement (the "BGN LLC Agreement", attached as Exhibit "A"), dated on or about February 21, 2014, between Blue Cal and Givaudan. BGN was created for the purpose of developing, manufacturing, marketing, and selling certain products.

11. The BGN Board of Directors consists of five (5) members as follows (the "Board"): (i) two (2) members designated by Givaudan (each a "Givaudan Director"), (ii) two (2) members designated by Blue Cal, currently Byron Olson ("Olson") and Oliver Yu ("Yu"); and (iii) the individual then serving as the CEO (at all times, Chen, together with the two directors designated by Blue Cal (Yu and Olson), collectively, the "Blue Cal Directors"). BGN LLC Agreement § 7.02(a). Yu is also the co-founder and CEO of CONAGEN. Olson is also the Chief Patent Counsel and Director of Legal Affairs for CONAGEN. The Givaudan directors are William Marino ("Marino") and Christopher Thoen ("Thoen") (collectively the "Givaudan Directors").

12. Throughout 2017 and 2018, the Blue Cal Directors have caused BGN to enter into a series of agreements or arrangements (the "Related-Party Transactions") with related parties Blue Cal, CONAGEN, and SWEEGEN (the "Related Parties"). The Related-Party Transactions caused BGN to transfer money to the Related Parties. The Related Parties, however, have not conferred the benefits BGN purportedly bargained for under the Related-Party Transactions. The Blue Cal Directors did not intend and have not attempted to enforce the Related Parties' obligations to BGN under the Related-Party Transactions or to seek redress for the Related Parties' breaches. Specifically:

   a. CONAGEN has failed to reimburse BGN for $1,000,000 it received for a research and development project known as the Green Note 1 Project; and

   b. SWEEGEN has failed to pay BGN for an outstanding receivable in the amount of $1,193,320.

13.     BGN has accordingly been injured in an amount of more than $2,193,320, representing CONAGEN's failure to reimburse BGN, SWEEGEN's failure to pay BGN, interest, costs, fees, and other amounts to be proven at trial.

## FACTS

### *BGN LLC AGREEMENT*

14.     As set forth below with reference to specific provisions of the BGN LLC Agreement, the Related-Party Transactions required unanimous consent of the Board.

15.     BGN is defined as "the Company" under the BGN LLC Agreement.

16.     Givaudan and Blue Cal are both "Member[s]" of BGN and parties to the BGN LLC Agreement.

17.     Section 1.01 of the BGN LLC Agreement defines "Affiliate" as:

> [A]ny Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question, except that neither Member nor any Affiliate of any Member shall be deemed to be an Affiliate of any other Member solely by virtue of the Member's Membership Interest. The term "Affiliated" and similar variations shall have correlative meanings. For purposes of this Agreement, "control" (including with correlative meanings, the terms "controlling," "controlled by" or "under common control with") as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

18.     Section 7.09 of the BGN LLC Agreement defines certain matters that require unanimous consent of the Board:

> Notwithstanding the provisions of Section 7.06 and Section 7.08, for so long as each Member (together with its Permitted Transferee Affiliates) holds a Percentage Interest of at least 33.33%, the Company shall not, and shall not permit any of its Subsidiaries to, engage in or cause any of the following actions, and neither the Board nor any committee thereof shall permit or cause the Company, or any of its Subsidiaries, to engage in, take or cause any such action except with the unanimous approval of the Board (the following enumerated actions being referred to as the "Significant Matters"), it being acknowledged and agreed that effective as of the time that any Member shall cease to hold a Percentage Interest of at least 33.33%, the provisions of this Section 7.09 shall no longer apply:

4
COMPLAINT
BGN TECH LLC V. CONAGEN INC. AND SWEEGEN, INC.

9115508.v1

> . . .
>
> (t) to the extent not included in the Annual Budget for such year, entry into, termination or suspension of any business projects;
>
> (u) entry (or any subsequent amendment, waiver or other modification) by the Company (or any Subsidiary thereof) into any agreement contract or arrangement (i) with any Member or their respective Affiliates (or any director or officer of such Member or any of its Affiliates) (a "Related-Party Transaction") except for entry into the Ancillary Agreements as contemplated hereunder, (ii) providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, (iii) that may restrict the ability of the Company (or any Subsidiary thereof) to compete with any Person in the Business anywhere in the world (whether pursuant to a non-competition, non-solicitation, most favored nation or other similar arrangement), (iv) with a competitor of either Givaudan or Blue Cal or any of their respective Affiliates, (v) with any governmental authority, providing for payments to or liability for the Company (or any Subsidiary thereof) in an aggregate principal amount in excess of $25,000, or (vi) involving any intellectual property rights that are material to the Company (or any Subsidiary thereof);

19.  CONAGEN and SWEEGEN are under common control with Blue Cal and BGN due to Chen's ability to direct the management of all four companies by virtue of his status as President and beneficial owner of Blue Cal; CEO and Chairman of BGN; majority shareholder, President, CEO, and CFO of SWEEGEN; trustee and beneficiary of the Chen Family Living Trust; and co-founder, Director, and beneficial owner of CONAGEN.

20.  Under the above-cited provisions of the BGN LLC Agreement, CONAGEN and SWEEGEN are both Affiliates of Blue Cal, a Member of BGN.

21.  Section 14.04 of the BGN LLC Agreement authorizes a Member to cause BGN to enforce BGN's rights and seek remedies with respect to Related-Party Transactions entered into between BGN and an Affiliate of the other member:

> Notwithstanding anything to the contrary elsewhere in this Agreement or the Ancillary Agreements, without any consent or approval of the Board, … (ii) Givaudan shall have the right to cause the Company to exercise the Company's rights (including all rights to access and information) and enforce the Company's remedies with respect to any and all Related-Party Transactions between the Company, on the one hand, and Blue Cal or any of its Affiliates, on the other hand, including pursuant to this Agreement and the

Ancillary Agreements ....

22. Givaudan, as a member of BGN, is accordingly entitled to cause BGN to bring this action to enforce BGN's rights and remedies with respect to the Related-Party Transactions.

### THE GREEN NOTE 1 PROJECT

23. In 2016, Givaudan Flavors Corporation signed a joint development agreement with an unrelated third party for the development of a biological process to produce a certain ingredient (the "Third-Party R&D").

24. Givaudan disclosed the existence of the third-party joint development agreement to the Blue Cal Directors at multiple BGN Board meetings, including on or about November 1, 2016.

25. In those Board presentations, Givaudan stated its intention that once the Third-Party R&D was completed, Givaudan would engage CONAGEN to do further downstream processing and scale up the results of the Third-Party R&D to manufacture and sell the ingredient to Givaudan.

26. On or about June 23, 2017, Givaudan Flavors Corporation entered into a confidentiality agreement with CONAGEN and disclosed confidential information necessary for CONAGEN to evaluate its capability to scale up of the results of the Third-Party R&D.

27. In mid-2017, Chen decided that the Third-Party R&D was against his personal interest and embarked on a campaign to punish Givaudan for the perceived slight.

28. On July 10, 2017, Chen called a special meeting of the Board via email to seek Board approval for BGN to enter into an agreement with CONAGEN to have CONAGEN develop a biological process to produce the same ingredient as the Third-Party R&D. This prospective project was known as the Green Note 1 Project.

29. In the same July 10, 2017 email, Chen attached a draft of a board resolution for the Green Note 1 Project under which BGN would pay CONAGEN $4,500,000.

30. In the July 10, 2017 email, Chen did not hide the retributive purpose of the Green Note 1 Project, stating, "The happy marriage of BGN suddenly seems like the movie 'sleeping with the enemy'."

31. On or about July 11, 2017, Thoen and Marino emailed the Board voting "no" to the Green Note 1 Project. Thoen noted in his email that Givaudan expected the Third-Party R&D to be complete within the next two months and stated that it did not make sense to "start a completely new project from scratch, as proposed in the current Board Resolution, to essentially repeat what [the third party] was already going to deliver and spend 4.5MM$." Instead, Thoen stated, "[w]hat makes sense is to build on the [Third-Party R&D] and have CONAGEN focus on the remaining work for the down stream process development, scale-up and manufacturing."

32. On July 12, 2017, Chen acknowledged the Givaudan Directors' "no" votes on the Green Note 1 Project.

33. The Blue Cal Directors all voted in support of the Green Note 1 Project.

34. Despite the lack of unanimous consent, on July 25, 2017, Chen sent an email to the Board stating, "I will continue implementing the resolution of 'Green Note' projects for the best interest of BGN-JV."

35. Later in July 2017 and again in August 2017, Givaudan wrote to Chen reiterating that the Givaudan Directors voted "no" to the Green Note 1 Project and advising Chen that advancing the project without unanimous Board consent was a breach of the BGN LLC Agreement.

36. Chen did not respond.

37. Sometime after the Green Note 1 Project Board resolution failed to pass by unanimous consent, Chen followed through on his intent to punish Givaudan for perceived slights by transferring $1,000,000 from BGN to CONAGEN, purportedly for CONAGEN to commence work on the Green Note 1 Project.

38. On August 1, 2017, the Givaudan Directors discovered that BGN made a payment of $1,000,000 to CONAGEN for the Green Note 1 Project.

39. Givaudan made several attempts to have Chen reverse the transaction, including sending Blue Cal notices of breach and demands to cure under the BGN LLC Agreement on August 9, 2017; January 25, 2018; and April 23, 2018.

40. Blue Cal and the Blue Cal Directors have ignored all such requests.

41. The Green Note 1 Project required unanimous Board consent under BGN LLC Agreement §§ 7.09(t) and 7.09(u), as set forth above in paragraphs 15-21, because it was not included in the Annual Budget for 2017 or 2018 and it was a Related-Party Transaction.

42. On information and belief, CONAGEN has not performed any work on the Green Note 1 Project.

43. Givaudan has requested that CONAGEN return the $1,000,000 for the Green Note 1 Project.

44. Chen, on behalf of CONAGEN, has promised to return the $1,000,000 for the Green Note 1 Project but has not done so to date, despite repeated requests from Givaudan.

### *OUTSTANDING BGN RECEIVABLES FROM SWEEGEN*

45. One of the functions of BGN in the relationship between Blue Cal and Givaudan is for Blue Cal to sell ingredients to BGN and for BGN to resell those ingredients to Givaudan.

46. Up until late 2017, BGN paid Blue Cal for the ingredients it purchased from Blue Cal, and Givaudan paid BGN for the ingredients it purchased from BGN.

47. In January 2018, the Board agreed to change the procedure to remove BGN from the middle of the transaction and replace it with SWEEGEN.

48. Following the change in procedure, instead of Blue Cal selling to BGN and BGN selling to Givaudan, Blue Cal was to sell to SWEEGEN, and SWEEGEN to Givaudan. However, the agreed upon procedure was not followed. Instead, Blue Cal continued to sell ingredients to BGN, BGN sold the ingredients to SWEEGEN, and SWEEGEN sold the ingredients to Givaudan.

49. The purchase-sale transactions between and among Blue Cal, BGN, Givaudan, and SWEEGEN are Related-Party Transactions under the BGN LLC Agreement provisions as set forth above in paragraphs 15-21.

50. Under the modified purchase-sale transactions, BGN has paid Blue Cal for certain ingredient purchases, and Givaudan has paid SWEEGEN for corresponding purchases, but SWEEGEN has not paid BGN for any of its purchases since the procedure was modified in January 2018.

51. Blue Cal and SWEEGEN have accordingly been enriched by the sale of ingredients to Givaudan while BGN has been impoverished by SWEEGEN's failure to pay BGN for such corresponding transactions.

52. As of April 30, 2018, BGN's balance sheet reflects a $1,193,320 receivable from SWEEGEN that SWEEGEN has thus far refused to pay.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT (Defendant CONAGEN Only)

53. All foregoing paragraphs in this Complaint are incorporated by reference.

54. BGN and CONAGEN entered into an informal agreement known as the Green Note 1 Project.

55. BGN paid CONAGEN $1,000,000 in connection with the Green Note 1 Project.

56. The Green Note 1 Project was not properly authorized by the BGN Board.

57. CONAGEN has done no work on the Green Note 1 Project, thus failing to perform under the agreement.

58. BGN did all, or substantially all, of the significant things the informal agreement required it to do.

59. BGN was excused from having to pay any further monies pursuant to the agreement.

60. CONAGEN has improperly retained the $1,000,000 paid by BGN for the Green Note 1 Project.

61. CONAGEN's retention of the $1,000,000 paid by BGN for the Green Note 1 Project without performing the work required under the transaction is a substantial factor in causing BGN's harm.

62. BGN has been injured by CONAGEN's breach of the informal agreement related to the Green Note 1 Project in an amount to be proved at trial, but no less than $1,000,000.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Defendant CONAGEN Only)

63. All foregoing paragraphs in this Complaint are incorporated by reference.

64. BGN and CONAGEN entered into an informal agreement known as the Green Note 1 Project.

65. BGN paid CONAGEN $1,000,000 toward the Green Note 1 Project.

66. CONAGEN has done no work on the Green Note 1 Project, thus failing to perform under the agreement.

67. BGN did all, or substantially all, of the significant things the agreement required it to do.

68. BGN was excused from having to pay any further monies pursuant to the agreement.

69. CONAGEN improperly interfered with BGN's rights to receive the benefits of the agreement.

70. CONAGEN's retention of the $1,000,000 paid by BGN for the Green Note 1 Project without performing the work required under the transaction is a substantial factor in causing BGN's harm.

71. BGN has been injured by CONAGEN's conduct related to the Green Note 1 Project in an amount to be proved at trial, but no less than $1,000,000.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT (Defendant CONAGEN Only)

72. All foregoing paragraphs in this Complaint are incorporated by reference.

73. CONAGEN received $1,000,000 for the Green Note 1 Project from BGN.

74. The $1,000,000 benefit was conferred on CONAGEN through mistake or coercion, as a result of Chen causing BGN to make the unauthorized payment to his affiliate Conagen.

75. The Green Note 1 Project is void or rescinded.

76. At no time has CONAGEN stated it expects or intends to retain, or has any right to retain, the $1,000,000. On the contrary, CONAGEN has repeatedly promised to return the monies but has not done so to date.

77. BGN has no adequate remedy at law, and equity requires restitution of the $1,000,000 payment from CONAGEN to BGN to prevent CONAGEN's unjust enrichment at the expense of BGN.

78. BGN has been injured by CONAGEN's retention of the $1,000,000 payment for the Green Note 1 Project in an amount to be proved at trial, but no less than $1,000,000.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT (Defendant SWEEGEN Only)

79. All foregoing paragraphs in this Complaint are incorporated by reference.

80. SWEEGEN and BGN entered into an agreement for the purchase of certain ingredients in exchange for $1,193,320.

81. BGN provided SWEEGEN with the ingredients pursuant to the agreement, thus performing all, or substantially all, of the significant things it was required to do under the agreement.

82. SWEEGEN was required to pay BGN $1,193,320.

83. SWEEGEN has not paid BGN $1,193,320, which is a substantial factor in causing BGN's harm.

84. BGN has been injured by SWEEGEN's breach of the agreement related to the purchase of certain ingredients in an amount to be proven at trial, but no less than $1,193,320.

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Defendant SWEEGEN Only)

85. All foregoing paragraphs in this Complaint are incorporated by reference.

86. SWEEGEN and BGN entered into an agreement for the purchase of certain ingredients in exchange for $1,193,320.

87. BGN provided SWEEGEN with the ingredients pursuant to the agreement, thus performing all, or substantially all, of the significant things it was required to do under the agreement.

88. SWEEGEN was required to pay BGN $1,193,320.

89. SWEEGEN improperly interfered with BGN's rights to receive the benefits of the agreement.

90. SWEEGEN has not paid BGN $1,193,320 despite due demand, which is a substantial factor in causing BGN's harm.

91. BGN has been injured by SWEEGEN's conduct in an amount to be proven at trial, but no less than $1,193,320.

### SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT (Defendant SWEEGEN Only)

92. All foregoing paragraphs in this Complaint are incorporated by reference.

93. BGN provided SWEEGEN with certain ingredients.

94. SWEEGEN received the ingredients from BGN through mistake or coercion, as a result of Chen causing BGN to make the unauthorized sale to his affiliate SWEEGEN.

95. Any agreement for the purchase of the ingredients is void or rescinded.

96. At no time has SWEEGEN stated that it expects or has a right to retain the ingredients without paying BGN the amount owed.

COMPLAINT
BGN TECH LLC V. CONAGEN INC. AND SWEEGEN, INC.

9115508.v1

97. In fact, SWEEGEN has no right to retain the ingredients without paying for it.

98. BGN has no adequate remedy at law, and equity requires that restitution of $1,193,320 from SWEEGEN to BGN to prevent SWEEGEN's unjust enrichment at the expense of BGN.

99. BGN has been injured by SWEEGEN's retention of the payment in an amount to be proven at trial, but no less than $1,193,320.

## SEVENTH CAUSE OF ACTION

## MONEY HAD AND RECEIVED (Defendant CONAGEN Only)

100. All foregoing paragraphs in this Complaint are incorporated by reference.

101. CONAGEN obtained a $1,000,000 payment for the Green Note 1 Project.

102. CONAGEN accepted and retained the payment.

103. BGN received no benefit in exchange for the payment.

104. Under the circumstances, in equity and good conscience, the payment should be returned to BGN.

105. BGN has been injured by CONAGEN's retention of the Green Note 1 Project payment in an amount to be proven at trial but no less than $1,000,000.

## EIGHTH CAUSE OF ACTION

## CONVERSION (Defendant CONAGEN Only)

106. All foregoing paragraphs in this Complaint are incorporated by reference.

107. BGN provided CONAGEN with a $1,000,000 payment for the Green Note 1 Project.

108. CONAGEN accepted and retained the payment.

109. CONAGEN has repeatedly promised to return the payment, but it has not done so to date.

110. The payment is BGN's personal property, and BGN has a right to immediate possession of it.

111. CONAGEN had no right to possession of the payment after BGN requested that it be returned.

112. By retaining the payment after BGN requested that it be returned, as well as after CONAGEN promised that it would be returned, CONAGEN has intentionally and wrongfully exercised ownership, control or dominion over BGN's personal property.

113. CONAGEN's wrongful retention of the payment has deprived BGN of it, thus interfering with BGN's right to it.

114. CONAGEN's wrongful retention of the $1,000,000 is a substantial factor in causing BGN's harm.

115. BGN has been injured by CONAGEN's retention of the payment in an amount to be proven at trial but no less than $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, BGN demands judgment against CONAGEN and SWEEGEN:

a) Awarding BGN $1,000,000 together with prejudgment interest from CONAGEN;

b) Awarding BGN $1,193,320 together with prejudgment interest from SWEEGEN;

c) For general damages and the amount necessary to prevent unjust enrichment of Defendants;

d) For compensatory damages;

e) Awarding BGN the reasonable costs of suit and attorneys' fees incurred in this action in an amount to be proven at trial; and

f) Such other and further relief as the Court determines to be just and appropriate.

///
///
///
///
///
///

**DEMAND FOR JURY TRIAL**

Plaintiff BGN Tech LLC hereby requests a jury for all issues so triable.

Dated: June 18, 2018

GOLDBERG SEGALLA LLP

By: *[signature]*
John F. Stephens
Steven S. Vahidi
Attorneys for Plaintiff
BGN TECH LLC

---

15
COMPLAINT
BGN TECH LLC V. CONAGEN INC. AND SWEEGEN, INC.

9115508.v1